UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

Landon Gonnering, and Norbert Chesney,

               Plaintiffs,

vs.

General Motors LLC,

               Defendant.

CASE NO.: _____

**COMPLAINT**

For this Complaint, the Plaintiffs Landon Gonnering and Norbert Chesney, by undersigned counsel, state as follows:

**PRELIMINARY STATEMENT**

1.  This is an action by the purchasers of a 2022 Chevrolet Tahoe High Country vehicle and a 2021 Chevrolet Silverado (hereafter the "subject vehicle") manufactured and sold by the Defendant General Motors LLC. Plaintiffs seek damages related to their vehicles' defects and Defendant's failure to honor the terms of its warranty.

2.  Plaintiffs would not have purchased the subject vehicles had they been made aware of the subject vehicles' defects.

**JURISDICTION AND VENUE**

3.  This Court has jurisdiction over this matter pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332 in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

4.  This Court also has jurisdiction over this matter pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1)(B), in that Plaintiffs claims more than $50,000.00 in damages, exclusive of interest and costs, and under the doctrine of supplemental

jurisdiction as set forth in 28 U.S.C. § 1367.

5. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1) as Defendant is subject to personal jurisdiction in this District and where Defendant, as principal, directs and controls warranty repairs on covered vehicles through its agents consisting of a dealership network located in this District.

6. Further, venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to the Plaintiffs' claims occurred within this District.

**PARTIES**

7. Plaintiff Landon Gonnering ("Plaintiff Gonnering" or "Mr. Gonnering") was, at all relevant times, an adult individual who resides in Green Bay, Wisconsin, and who purchased the subject vehicle in Green Bay, Wisconsin, which was manufactured or sold by Defendant. Plaintiff is a citizen of Wisconsin.

8. Plaintiff Norbert Chesney ("Plaintiff Chesney" or "Mr. Chesney") was, at all relevant times, an adult individual who resides in Fond Du Lac, Wisconsin, and who purchased the subject vehicle in Oshkosh, Wisconsin, which was manufactured or sold by Defendant. Plaintiff is a citizen of Wisconsin.

9. Defendant General Motors LLC ("GM") is organized under the laws of Delaware with its principal place of business located at 1240 Woodward Avenue, Detroit, Michigan 48226.  At all relevant times, GM was engaged in the business of importing, assembling, marketing, distributing, and warranting GM automobiles in the State of Oregon and throughout the United States. Defendant GM LLC is a Delaware limited liability company. Its sole member is General Motors Company, a Delaware corporation with its

principal place of business in Michigan. Upon information and belief, complete diversity exists between the parties.

**FACTUAL ALLEGATIONS**

**A.      Landon Gonnering**

10.      On October 13, 2022, Plaintiff Gonnering leased a new 2022 GMC Sierra 1500 equipped with L87 6.2L V-8 engine, Vehicle Identification Number 1GTPUEELXNZ638990 (hereafter the "Gonnering Vehicle") from Bergstrom Cadillac of Green Bay Inc, an authorized GM dealership in Green Bay, Wisconsin (hereinafter "Bergstrom Cadillac").

11.      The total gross capitalized cost of the Gonnering Vehicle, plus options, fees, taxes, and other charges exceeded $75,000.00.

12.      At the time of delivery, the Gonnering Vehicle's odometer read 10 miles.

13.      Prior to purchasing the Gonnering Vehicle, Mr. Gonnering relied upon Defendant's representations regarding Defendant's New Vehicle Limited Warranty that accompanied the sale of the Gonnering Vehicle, including the representation that Defendant would repair the Gonnering Vehicle; these representations were material to Mr. Gonnering's decision to purchase the Gonnering Vehicle.

14.      Specifically, under its New Vehicle Limited Warranty, Defendant promised to repair or replace components found to be defective in material or workmanship during the 3-year / 36,000-mile following such vehicle delivery to consumer.  Additionally, Defendant promised to repair or replace the powertrain components, including the Gonnering Vehicle's engine, found to be defective in material or workmanship during the 5-year / 60,000-mile following such vehicle delivery to consumer.

3

15. On October 13, 2022, and following the execution of the Gonnering Vehicle lease documents, Mr. Gonnering took delivery of the Gonnering Vehicle.

16. Subsequently, on January 6, 2026, following the expiration of the lease agreement term, Plaintiff Gonnering purchased the Gonnering Vehicle.

17. Since the time of Vehicle delivery to the present, the Gonnering Vehicle has been out of service over forty (40) days because of catastrophic engine failure and other defects.

18. On February 16, 2023, Mr. Gonnering returned the Gonnering Vehicle to Bergstrom Cadillac to complete the recall on daytime running lights not deactivating.

19. At the time the Gonnering Vehicle's odometer read 7,089 miles.

20. Bergstrom Cadillac attempted a repair by programming BCM with latest calibration.

21. During this visit, the Gonnering Vehicle was out of service one day and the Vehicle was returned to Mr. Gonnering on February 16, 2023.

22. On May 11, 2023, Mr. Gonnering returned the Gonnering Vehicle to Bergstrom Cadillac and complained that adaptive cruise was inoperable and there was a pop-up message on the dashboard.

23. At the time the Gonnering Vehicle's odometer read 12,120 miles.

24. Bergstrom Cadillac verified the concern, and attempted a repair by removing and reinstalling front view camera fuse, and cleared DTC.

25. During this visit, the Gonnering Vehicle was out of service one day returned to Mr. Gonnering on May 11, 2023.

26.     On October 14, 2024, Mr. Gonnering returned the Vehicle to Bergstrom Cadillac to complete recalls on serail data gateway module and radio and transmission control body screen failure.

27.     At the time the Gonnering Vehicle's odometer read 40,691 miles.

28.     Bergstrom Cadillac performed software update to radio and performed USB file transfer, performed serial data gateway control module update, and updated software for the transmission control module.

29.     During this visit, the Gonnering Vehicle was out of service one day was returned to Mr. Gonnering on October 14, 2024.

30.     On February 14, 2025, Mr. Gonnering returned the Vehicle to Bergstrom Cadillac and complained that as he was driving on the highway, the Gonnering Vehicle engine shut off.

31.     At the time the Gonnering Vehicle's odometer read 46,853 miles.

32.     Bergstrom Cadillac verified the complaint, found engine oil filled with bearing material due to internal engine failure, and attempted a repair by replacing the engine, oil cooler lines and radiator, and battery fuse block.

33.     During this visit, the Gonnering Vehicle was out of service forty-four (44) days and was returned to Mr. Gonnering on April 9, 2025.

34.     By a letter dated July 18, 2025, Plaintiff Gonnering, through his counsel, sent a letter to Defendant advising it that his vehicle suffered from the aforementioned defects and that Defendant failed to repair these defects within a reasonable time under Defendant's warranty, and demanded relief.

5

35.     The defects experienced by Plaintiff Gonnering substantially impair the use, value, and safety of the Gonnering Vehicle.

36.     Plaintiff Gonnering provided the Defendant, or one or more of its authorized or franchised dealers, with reasonable opportunity to repair the problems with the Gonnering Vehicle.

37.     The Defendant has neglected, failed, or otherwise been unable to repair the substantial impairments to the Gonnering Vehicle within a reasonable amount of time.

**B.  Norbert Chesney**

38.     On or about March 23, 2022, Plaintiff Chesney purchased a new 2021 Chevrolet Silverado equipped with L87 6.2L V-8 engine, Vehicle Identification Number 1GKS2DKL9NR241760 (hereafter the "Chesney Vehicle") from Bergstrom Chevrolet Cadillac Buick GMC Truck, Inc., an authorized GM dealership in Oshkosh, Wisconsin (hereinafter "Bergstrom Chevrolet").

39.     The purchase price of the Chesney Vehicle was $56,720.00, excluding options, fees, taxes, and other charges.

40.     Prior to purchasing the Chesney Vehicle, Mr. Chesney relied upon Defendant's representations regarding Defendant's New Vehicle Limited Warranty that accompanied the sale of the Chesney Vehicle, including the representation that Defendant would repair the Chesney Vehicle; these representations were material to Plaintiff Chesney's decision to purchase the Chesney Vehicle.

41.     Specifically, under its New Vehicle Limited Warranty, Defendant promised to repair or replace components found to be defective in material or workmanship during the 3-year / 36,000-mile following such vehicle delivery to consumer.  Additionally, Defendant

promised to repair or replace the powertrain components, including the Chesney Vehicle's engine, found to be defective in material or workmanship during the 5-year / 60,000-mile following such vehicle delivery to consumer.

42. On or about March 23, 2022, and following the execution of the Chesney Vehicle purchase documents, Mr. Chesney took delivery of the Chesney Vehicle.

43. On September 29, 2025, the Chesney Vehicle suffered a catastrophic engine failure while Mr. Chesney was driving it.

44. That same day, Mr. Chesney had his Vehicle towed to Bergstrom Chevrolet for a repair.

45. At that time, the Chesney Vehicle odometer read approximately 57,183 miles.

46. Bergstrom Chevrolet verified the complaint and attempted a repair by replacing the Chesney Vehicle engine and water pump.

47. During this visit the Chesney Vehicle was out of service for seventy-five (75) days and ready for pick up on December 12, 2025.

48. By U.S. First Class Mail sent on December 4, 2025, Plaintiff Chesney notified Defendant of the above mentioned nonconformities with his vehicle and Defendant's failure to conform the Chesney Vehicle to the terms of Defendant's express warranty. Within same letter, Plaintiffs Chesney revoked his acceptance of his vehicle.

49. The defects experienced by Plaintiff Chesney substantially impair the use, value, and safety of the Chesney Vehicle.

50. Plaintiff Chesney provided the Defendant, or one or more of its authorized or franchised dealers, with reasonable opportunity to repair the problems with the Chesney Vehicle.

51.     The Defendant has neglected, failed, or otherwise been unable to repair the substantial impairments to the Chesney Vehicle within a reasonable amount of time.

## TOLLING OF STATUTES OF LIMITATIONS

### I.     Fraudulent Concealment Tolling

52.     Plaintiffs did not and could not have known that the Subject Vehicles were equipped with defective L87 engines prone to bearing failure, engine seizure, and catastrophic loss of propulsion at the time of purchase or lease or within the applicable limitations period.

53.     Any applicable statute of limitations is tolled because Defendant knowingly and actively concealed the L87 Engine defect and its associated safety risks from Plaintiffs.

54.     Defendant had a duty to disclose the defect because it possessed exclusive and superior knowledge of the L87 Engine's propensity for internal bearing failure and catastrophic engine seizure, which poses a serious safety risk, including sudden loss of propulsion at highway speeds.

55.     Defendant knew of the defect prior to sale through, inter alia, pre-production testing, warranty data, dealer repair data, customer complaints, and its obligation to monitor safety-related data, including reports submitted to the National Highway Traffic Safety Administration.

56.     Despite this knowledge, Defendant failed to disclose the defect at the time of sale or thereafter and instead marketed the vehicles as safe, reliable, and durable, thereby actively concealing the true nature of the defect.

57.     Defendant further concealed the defect by failing to identify or acknowledge the root cause of engine failures when Plaintiffs presented their vehicles for service, and by attributing symptoms to normal operation, maintenance issues, or isolated incidents rather than a systemic defect.

58.     Until the 2025 recall and related disclosures – triggered only after government investigation – Defendant uniformly failed to inform consumers that the L87 Engine was defective and could fail without warning, leaving Plaintiffs without the ability to discover the defect through reasonable diligence.

59.     Defendant's concealment was knowing, affirmative, and ongoing, and was intended to delay or prevent Plaintiffs from discovering their claims.

60.     As a result of Defendant's conduct, Plaintiffs were kept ignorant of material facts necessary to assert their claims, and Defendant is equitably estopped from asserting any statute of limitations defense.

## II.     Discovery Rule Tolling

61.     Plaintiffs' claims did not accrue, and the statute of limitations was tolled, until Plaintiffs discovered or reasonably could have discovered the existence of the L87 Engine defect.

62.     The defect is latent and not discoverable through reasonable inspection because it resides in internal engine components – including bearings, crankshaft, and connecting rods – and manifests only upon sudden and catastrophic failure.

63.     Prior to the NHTSA investigation and Defendant's subsequent recall, Plaintiffs had no reason to suspect that their vehicles contained a systemic defect, particularly in light of Defendant's uniform representations that the vehicles were safe, reliable, and of high quality.

64.     Even where symptoms occurred, Defendant failed to disclose the true cause of those symptoms and instead concealed the existence of a common defect, thereby preventing Plaintiffs from discovering their claims through reasonable diligence.

65.     Plaintiffs therefore could not reasonably have discovered the defect or its cause until Defendant's public admissions and recall activity in or about 2025.

### III.    Estoppel

66.    Defendant was under a continuing duty to disclose the true nature, quality, and safety risks of the Subject Vehicles and the L87 Engine defect.

67.    Defendant knowingly, affirmatively, and actively concealed the defect and continued to misrepresent the vehicles as safe and reliable, despite its knowledge of the defect and its potential for catastrophic engine failure.

68.    Plaintiffs reasonably relied on Defendant's omissions and misrepresentations and were thereby prevented from timely asserting their claims.

69.    Accordingly, Defendant is equitably estopped from asserting any statute of limitations defense.

### IV.    Class Action Tolling

70.    The statutes of limitation applicable to Plaintiffs' claims – including, without limitation, their express warranty and implied warranty – the running of the limitation periods have been tolled by class action tolling, the *John v. Gen. Motors, LLC*, originally filed on June 27, 2025, as Case No. 2:25-cv-00914 (E.D. Wis.) and subsequently transferred from the Eastern District of Wisconsin to Eastern District of Michigan (upon transfer, assigned Case No. 2:25-cv-12097) (attached hereto as Exhibit A).

**FIRST CAUSE OF ACTION**
**Breach of Warranty Pursuant to the Magnuson-Moss**
**Warranty Act, 15 U.S.C. §2301, *et seq.***

71.    The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

72.    Each Plaintiff is a "consumer" as defined in 15 U.S.C. § 2301(3).

73.    Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

74. The subject vehicle is a "consumer product" as defined in 15 U.S.C. § 2301(6).

75. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

76. 15 U.S.C. § 2304(a)(1) requires Defendant, as warrantor, to remedy any defect, malfunction or nonconformance of the subject vehicle within a reasonable time and without charge to the Plaintiffs.

77. Defendant has failed to remedy the subject vehicle's defects within a reasonable time, thereby breaching the written and implied warranties applicable to the subject vehicle.

78. As a result of Defendant's breaches of written and implied warranties, and Defendant's failure to remedy the same within a reasonable time, Plaintiffs have suffered damages.

**SECOND CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.* and W.S.A. §402.314**

79. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

80. Defendant is a merchant with respect to motor vehicles.

81. The Subject Vehicles were subject to implied warranty of merchantability, as defined in and W.S.A. §402.314, running from the Defendant to each Plaintiff.

82. An implied warranty that the subject vehicle was merchantable arose by operation of law as part of the purchase or lease of the subject vehicle.

83. Defendant breached the implied warranty of merchantability in that the subject vehicles were not in merchantable condition when Plaintiffs purchased them, or at any time

11

thereafter, and the subject vehicles are unfit for the ordinary purposes for which such vehicles are used.

84.     Plaintiffs notified Defendant of the defect in the subject vehicles within a reasonable time after Plaintiffs discovered them.

85.     As a result of Defendant's breach of the implied warranty of merchantability, Plaintiffs have suffered damages, including but not limited to incidental and consequential damages.

**THIRD CAUSE OF ACTION**
**Breach of Express Warranty, W.S.A. §402.313**

86.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

87.     In connection with the sale or lease of the subject vehicles to the Plaintiffs, Defendant provided Plaintiffs with a New Vehicle Limited Warranty, under which it agreed to repair original components found to be defective in material or workmanship under normal use and maintenance, including the engine and its components.

88.     Plaintiffs relied on Defendant's warranty when they agreed to purchase or lease the subject vehicles and Defendant's warranty was part of the basis of the bargain.

89.     Plaintiffs submitted their vehicles for warranty repairs as referenced herein. Defendant failed to comply with the terms of the express written warranty provided to the Plaintiffs, by failing to repair the defects under the Subject Vehicles' warranty as described herein within a reasonable period of time.

90.     Plaintiffs have given Defendant reasonable opportunities to cure said defect, but Defendant has been unable and/or has refused to do so within a reasonable time.

91.     As a result of said nonconformities, Plaintiffs cannot reasonably rely on the subject vehicles for the ordinary purpose of safe, comfortable, and efficient transportation.

92.     The Plaintiffs could not reasonably have discovered said nonconformities with the subject vehicles prior to Plaintiffs' acceptance of the subject vehicles.

93.     The Plaintiffs would not have purchased or leased the subject vehicles, or would have paid less for the subject vehicles, had they known, prior to the time of purchase or lease, that the subject vehicles contained these defects.

94.     As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranty, Plaintiffs have suffered actual and consequential damages.  Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the subject vehicles containing the defects identified herein.

**FOURTH CAUSE OF ACTION**
**Revocation of Acceptance, W.S.A. §402.608**

95.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

96.     Plaintiffs reasonably assumed, and Defendant represented, that all of the aforesaid defects would be cured within a reasonable time.

97.     After providing Defendant a reasonable opportunity to cure, it has become apparent that said defects cannot be seasonably cured.

98.     The defects substantially impair the value of the Subject Vehicles to Plaintiffs.

99.     Each Plaintiff notified Defendant via written correspondence of said defects and of Plaintiffs' intent to revoke acceptance and demand return of the purchase price of said Vehicles.

100.    Defendant has nevertheless failed to make a good-faith response to these demands within thirty (30) days of their receipt.

101.    As a result of Defendant's conduct the Plaintiffs have been damaged.

**FIFTH CAUSE OF ACTION**
**Violation of the Wisconsin Deceptive Trade Practices Act**
**W.S.A. §100.18**

102.    The Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

103.    The Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

104.    Defendant is a "seller" under W.S.A. §100.18 by advertising, offering for sale, selling, leasing, and/or distributing the subject vehicles in the United States, including Wisconsin, directly or indirectly affecting Wisconsin citizens.

105.    Plaintiffs are part of "the public" under W.S.A. §100.18 because they sought or acquired the subject vehicles by purchase or lease as a result of representations Defendant made to "the public."

106.    Wisconsin's Deceptive Trade Practices Act, Wis. Stat. § 100.18, prohibits any person, firm, corporation, or association, or agent or employee thereof, from making, publishing, disseminating, circulating, or placing before the public, in any manner, any advertisement, announcement, statement, or representation of any kind relating to the sale of goods that contains any assertion, representation, or statement of fact that is untrue, deceptive, or misleading, and that is made with the intent to induce an obligation.

107.    In the course of Defendant's trade or commerce, Defendant made, published, and disseminated representations to the public, including Plaintiffs, that the subject vehicles

14

possessed characteristics, uses, benefits, and qualities they did not have, including reliability, durability, and fitness for safe and ordinary transportation. These representations were untrue, deceptive, or misleading because the vehicles were equipped with a defective 6.2L V8 L87 engine prone to bearing failure, engine seizure, and sudden loss of propulsion.

108.    Defendant further represented that the subject vehicles were of a particular standard, quality, and grade when, in fact, they contained a latent and dangerous engine defect that substantially impairs their safety, reliability, and value.

109.    Defendant knew or should have known, at the time these representations were made, that they were untrue, deceptive, or misleading. Defendant possessed exclusive and superior knowledge of the defect through pre-sale testing, warranty data, customer complaints, dealer repair data, and its monitoring of safety-related information.

110.    Defendant made these representations and omissions with the intent to induce consumers, including Plaintiffs, to purchase or lease the subject vehicles. Plaintiffs and reasonable consumers relied on these representations in deciding to purchase their vehicles.

111.    Defendant failed to disclose the existence of the L87 engine defect at or before the time of sale, despite its duty to do so, rendering its affirmative representations misleading and deceptive to a reasonable consumer.

112.    Defendant's conduct occurred in the course of trade or commerce and involved representations made to the public with the capacity and tendency to deceive a substantial portion of consumers.

113.    Defendant's deceptive conduct affects the public interest because it involves the marketing and sale of hundreds of thousands of vehicles containing a safety-related defect, thereby posing a risk not only to Plaintiffs but to the consuming public at large.

15

114.     As a direct and proximate result of Defendant's violations of Wis. Stat. § 100.18, Plaintiffs suffered pecuniary loss, including but not limited to overpayment for the subject vehicles, diminution in value, loss of use, and other out-of-pocket expenses.

## DEMAND FOR RELIEF

WHEREFORE, the Plaintiffs demand judgment against Defendant as follows:

a.  An order approving revocation of acceptance of the subject vehicle;

b.  Money damages, in the form of a refund of the full contract prices, including, trade-in allowance, taxes, fees, insurance premiums, interest, and costs, and a refund of all payments made by Plaintiffs on the subject contract;

c.  Incidental and consequential damages;

d.  Punitive damages;

e.  Reasonable attorney's fees;

f.  Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: April 6, 2026

Respectfully submitted,

By:     /s/ Sergei Lemberg
        Sergei Lemberg, Esq.
        LEMBERG LAW, L.L.C.
        43 Danbury Road
        Wilton, CT 06897
        Telephone: (203) 653-2250
        Facsimile:  (203) 653-3424
        *Attorneys for Plaintiffs*

16